ACCEPTED
14-14-00822-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
7/21/2015 9:02:51 PM
CHRISTOPHER PRINE
CLERK

NO. 14-14-00822-CV

IN THE COURT OF APPEALS
FOR THE FOURTEENTH JUDICIAL DISTRICT OF TEXAS
AT HOUSTON

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
7/21/2015 9:02:51 PM
CHRISTOPHER A. PRINE
Clerk

TOKES TOSIN ADELEYE,

Appellant

V.

MARGARET MODUPE DRISCAL,

Appellee

ON APPEAL FROM THE 310TH JUDICIAL DISTRICT COURT,
HARRIS COUNTY, TEXAS
TRIAL CAUSE NO. 2013-66224

APPELLEE'S BRIEF

Respectfully submitted,

THEODORE HAYNES, JR.
Attorney for Appellee
Texas Bar No. 00787665
P.O. Box 300833
Houston, Texas 77230-0833
Telephone: (713) 660-7646
Telecopier: (713) 660-0203
E-mail: thaynesjr@prodigy.net

ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

**Appellee:**

Margaret Modupe Driscal

**Attorney:**

Theodore Haynes, Jr.
Attorney for Appellee
Texas Bar No. 00787665
P.O. Box 300833
Houston, Texas 77230-0833
Telephone: (713) 660-7646
Telecopier: (713) 660-0203
E-mail: thaynesjr@prodigy.net

**Respondent/Appellant:**

Tokes Tosin Adeleye

**Attorney:**

Pro Se
7901 Glen Cove Lane
Stone Mountain, Georgia   30083
Telephone: (770) 498-3525
Telecopier: (770) 498-3525

i

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL………………………………...…………i

TABLE OF CONTENTS………………………………………………………….…ii

INDEX OF AUTHORITIES………………………………………………...iii-iv

RECORD REFERENCES...............................................................................................v

STATEMENT OF THE CASE……………………………………………….…1

STATEMENT OF THE FACTS……………………………………………..2-12

SUMMARY OF THE ARGUMENT…………………………………………….13

ARGUMENT…………………………………………………………….14-57

    Reply to Appellant's Issue No. 1.
        The finding that that parties were married in Nigeria, on May 18, 1984, without impediments, was a just and right finding by the trier of fact and the facts support that finding..........................................................................14-42

    Reply to Appellant's Issue No. 2.
        Appellant received ample notice that an expert in Nigerian traditional weddings would testify................................…42-44

    Reply to Appellant's Issue No. 3.
        The Trial Court had in personum jurisdiction over the Petitioner and the Respondent.................................………..44-50

    Reply to Appellant's Issue No. 4.
        The Trail Court had in rem jurisdiction over the property the subject of the lawsuit………………………..…51-57

REQUEST TO SUPPLEMENT CLERK'S RECORD…………………….…58

ATTORNEY'S FEES AND COST………………………………………...58-59

PRAYER………………………………………………………………....60

CERTIFICATE OF COMPLIANCE.........................................................................61

CERTIFICATE OF SERVICE…………………………………………....61

VERIFICATION………………………………………………………....62

# INDEX OF AUTHORITIES

Texas Family Code, §1.101................................................................14

Texas Family Code, §1.103................................................................14

Texas Family Code, §1.102................................................................15

Texas Family Code, Chapter 6 §6.202................................................16

*Fantasy Ranch, Inc. v. City of Arlington,*

193 S.W. 3d 605, 615 (Tex. App. – Fort Worth 2006, pet. denied)..........41

*McMahan v. Greenwood,*

108 S.W. 3d 467, 500 (Tex. App. – Houston [14TH Dist.] 2003,

pet. denied)................................................................................41

Tex. R. App. P. 33.1 (a).................................................................41

*Pat Baker Co. v. Wilson,*   971 S.W. 2d 447, 450 (Tex. 1998)............41

*Exxon Mobil Corp. v. Hines,*

252 S.W. 3d. 496, 507 (Tex. App. – Houston [14TH Dist.] 2008,

pet. denied................................................................................41

Texas Family Code, Chapter 6 §6.301................................................44

Texas Family Code, Chapter 6 §6.202................................................44

*In the Interest of S.A.V.,* 837 S.W. 2d. 80 (Tex. 1992).........................48

*Reynolds v. Reynolds*,

2 S.W. 3d. 429 (Tex. App. – Houston [1ST Dist.] (1999).......................48

*Texas Elec. Ry. Co. v. Neale,*

244 S.W. 2d. 329 (Tex. Civ. App. Waco, 1951)..............................52

*Orbeck v. Allen,* 276 S,W, 947 (Tex. Civ. App. - Waco 1925)...........….52


*Davey v. Margarett Jordan Royalties, Inc.*

Court of Appeals, Tyler, August 13, 2014, Not reported in S.W. 3d,

2014 WL 3939669, 12-13-00002-CV.....................................52


*Aloe Ltd., Inc. v. Koch,*

735 S.W. 2d. 364, (Tec, Civ. App. – Corpus Christi, 1987, no writ).…......52


*Fish v. Tandy Corp.,*

948 S.W. 2d. 886, 887 (Tex. App. Fort Worth 1997, pet. denied)..........52


*Wells v. Hiskett,* 288 S.W. 2d. 257 (Tex. Civ. App. – Texarkana, 1956) …52

# RECORD REFERENCES

## Clerk's Record

The Clerk's Record consist of one (1) volume and is referred herein as CR followed by the page number(s).

## Reporter's Record

The Reporter's Record consist of a one (1) volume of one (1) of the temporary orders hearing, on January 7, 2014, recorded by Deputy Court Reporter Kim Weidenheft, (referred to herein as D.R.R., followed by the volume number, page number(s) and line number(s)) and the two (2) volume of three (3) volume of record of the trial itself, on September 23, 2014, recorder by Official Court Reporter Ben Alva, (referred to herein as O.R.R. followed by the volume number, page number(s) and line number(s)) and the one (1) volume of one (1) volume of record of the trial itself, on September 24, 2014, recorded by computerized stenotype machine, by Deputy Court Reporter Geneva M. Villanueva, (referred to herein as R.R., followed by the volume number, page number(s) and line number(s).

## Exhibits

Exhibits will be referred to by Exhibit No. e.g. "Petitioner's Exhibit No. 1"

TO THE HONORABLE COURT OF APPEALS:

MARGARET MODUPE DRISCAL, (hereinafter "Driscal"), Appellee, files her brief in response to the appeal of TOKES TOSIN ADELEYE (hereinafter "Adeleye"), Appellant, in this cause. Driscal requests the opportunity for oral argument of this appeal. Because of the complexity of the claims and procedures in issue, Driscal believes oral argument will help to clarify the claims of the parties.

## STATEMENT OF THE CASE

The finding that the parties were married in Nigeria, on May 18, 1984, without impediments, was a just and right finding by the trier of fact and the facts support that finding.

Appellant received ample notice that an expert in Nigerian traditional weddings would testify.

The Trial Court had in personam jurisdiction over the Appellee and the Appellant.

The Trial Court had in rem jurisdiction over the property the subject of the lawsuit.

1

# STATEMENT OF FACTS

On MAY 18, 1984, the parties to the underlying lawsuit were married in NIGERIA, through a traditional Nigerian wedding, which is recognized as a valid marriage in the United States of America. After the wedding, the parties lived together as husband and wife, held themselves out to the world as being married, were the biological parents of three children and shared in the payments of expenditures together. No evidence of any marriages of the parties that occurred prior to the MAY 18, 1984, such as a marriage license or marriage certificate, was produced and entered into evidence or even attempted to be entered into evidence.

On November 1, 2013, Driscal filed her Original Petition For Divorce. On JANUARY 7, 2014, a temporary orders hearing was held in the underlying case, to decide which party would have temporary possession of the real property located at 23015 ADWICK COURT, KATY, HARRIS COUNTY, TEXAS 77450. The property the subject of the temporary orders hearing was in the possession of the Appellee/Petitioner MARGARET DRISCAL (Driscal), at the time of the temporary orders hearing. An eviction case had been filed by Appellant/Respondent TOKES TOSIN ADELEYE (Adelye), at the time of the temporary orders hearing.

2

Please note that the eviction case was not filed by LONGTERM CARE, INC. or on behalf of LONGTERM CARE, INC., as Plaintiff, but was filed with TOKES TOSIN ADELEYE (Adeleye) as Plaintff. *Tokes Adeleye v. Margaret Driscal*, Cause No. EV52C0348292, Justice of the Peace, Precinct 5, Place 2, Harris County, Texas (December 17, 2013 – January 7, 2014. After the temporary orders hearing, the Court ruled that Adeleye should have temporary possession of the property the subject of the lawsuit. The Court found that additional evidence of the traditional Nigerian wedding was required.

On SEPTEMBER 23, 2014 and SEPTEMBER 24, 2014, the parties to this cause proceeded to trial before the Court, and the Court having heard and considered the admissible evidence and the arguments of counsel rendered its opinion as follows:

"No jury having been demanded by either party, and it appearing that the Original Petition for Divorce filed herein by Petitioner has been on file for at least sixty days and is in proper form and contains all the allegations required by law, the Court proceeded to hear the evidence and argument, and, same having been submitted to the Court, the Court is of the opinion that the material allegations of said Petition are true and correct and have been proved by full and satisfactory evidence and that findings and orders should be entered as follows:

3

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction over this cause of action and the parties and that at least 60 days have elapsed since the date the suit was filed. The Court finds that, at the time of the filing of this suit, Petitioner had been a domiciliary of the State for the preceding six-month period and a resident of this county for the preceding ninety-day period. All persons entitled to citation were properly cited.

The Court finds that the parties were married in NIGERIA, on MAY 18, 1984, and therefore the marriage is valid.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the marriage of MAY 18, 1984, in NIGERIA, of MARGARET MODUPE DRISCAL, Petitioner, also know as MARGARET MODUPE EGUN, and TOKES TOSIN ADELEYE, Respondent, is valid.

The Court finds that Petitioner should be granted a divorce from Respondent severing the bonds of matrimony between them.

4

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the bonds of matrimony heretofore existing between said Petitioner and Respondent are hereby dissolved and Petitioner is granted a divorce from Respondent.

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party:

IT IS ORDERED, ADJUDGED AND DECREED that Petitioner, MARGARET MODUPE DRISCAL, is awarded the following as her sole and separate property, and Respondent, TOKES TOSIN ADELEYE, is hereby divested of all right, title, interest, beneficial interest, and claim in and to such property:

a. The parties real property located at 23015 ADWICK COURT, KATY, TEXAS 77450, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, garage openers, house plans, warranties, service contracts, and title documents and legally described as follows:

> LOT(S) 60, IN BLOCK 3, OF GOVERNOR'S PLACE, SECTION FOUR (4), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED AT FILM CODE NO. 353011, OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

b. The 1994 Toyota Camry, License Plate No. BK5Z524, Vehicle Identification Number 4T1SK12E5RU369861.

c. The 1995 Toyota Land Cruiser, License Plate No. RSN022, Vehicle Identification Number JT3DJ81W2S0096317.

d. All household furniture. furnishings, fixtures, goods, appliances, and equipment in the possession of or subject to the sole control of Petitioner.

e. All clothing, jewelry, and other person effects in the possession of or subject to the sole control of Petitioner.

f. Any and all sums of cash in the possession of or subject to the sole control of Petitioner, including money on account in banks, savings institutions, or other financial institutions, which accounts stand in Petitioner's sole name of from which Petitioner has the sole right to withdraw funds or which are subject to Petitioner's sole control.

g. Any and all sums whether matured or unmatured, accrued or unaccrued, vested of otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit program existing by reasons of Petitioner's past present or future employment.

6

h. Any and all policies of life insurance insuring the life of Petitioner.

i. Any and all stocks, bonds, and securities registered in the name of Petitioner, together with all dividends, splits, and other rights and privileges in connection therewith.

IT IS ORDERED, ADJUDGED AND DECREED that Respondent, TOKES TOSIN ADELEYE, is awarded the following as his sole and separate property, and Petitioner, MARGARET MODUPE DRISCAL, is hereby divested of all right, title, interest, beneficial interest, and claim in and to such property:

a. The parties real property located at 7091 GLEN COVE LANE, STONE MOUNTAIN, GEORGIA 30087, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, garage openers, house plans, warranties, service contracts, and title documents.

b. The parties real property located at 2920 NORTH DESHONG ROAD, STONE MOUNTAIN, GEORGIA 30097, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, garage openers, house plans, warranties, service contracts, and title documents.

7

c. The parties real property located at 1 LOT IN COLUMBUS GEORGIA, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, garage openers, house plans, warranties, service contracts, and title documents.

d. The 2001 Mercedes Benz Model S430 License Plate No. _____, Vehicle Identification Number _____.

e. The 2008 Volkswagen Passat, License Plate No. _____, Vehicle Identification Number _____.

f. The 1983 Mercedes Benz Model 380, License Plate No. _____, Vehicle Identification Number _____.

g. The 1996 Lexus LX450, License Plate No. _____, Vehicle Identification Number _____.

h. All household furniture. furnishings, fixtures, goods, appliances, and equipment in the possession of or subject to the sole control of Respondent.

i. All clothing, jewelry, and other person effects in the possession of or subject to the sole control of Respondent.

8

j. Any and all sums of cash in the possession of or subject to the sole control of Respondent, including money on account in banks, savings institutions, or other financial institutions, which accounts stand in Respondent's sole name of from which Respondent has the sole right to withdraw funds or which are subject to Respondent's sole control.

k. Any and all sums whether matured or unmatured, accrued or unaccrued, vested of otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit program existing by reasons of Respondent's past present or future employment.

l. Any and all policies of life insurance insuring the life of Respondent.

m. Any and all stocks, bonds, and securities registered in the name of Respondent, together with all dividends, splits, and other rights and privileges in connection therewith.

9

IT IS ORDERED, ADJUDGED AND DECREED that, MARGARET MODUPE DRISCAL shall pay, indemnify and hold TOKES TOSIN ADELEYE harmless from payment and liability for the following debts:

a. The real property taxes associated with the real property, located at 23015 ADWICK COURT, KATY, TEXAS 77450, mentioned above, account number 1174940030060 and account number _____.

b. All credit card debt in Petitioner, MARGARET MODUPE DRISCAL'S name.

c. All debt in Petitioner, MARGARET MODUPE DRISCAL'S name.

IT IS ORDERED, ADJUDGED AND DECREED that TOKES TOSIN ADELEYE shall pay, indemnify and hold , MARGARET MODUPE DRISCAL harmless from payment and liability for the following debts:

a. The mortgage and any debt associated with the real property, located at 7091 GLEN COVE LANE, STONE MOUNTAIN, GEORGIA 30087, mentioned above, _____ account number _____.

b. The mortgage and any debt associated with the real property, located at 2920 NORTH DESHONG ROAD, STONE MOUNTAIN, GEORGIA 30097, mentioned above, _____ account number _____.

10

c. The mortgage and any debt associated with the real property, located at 1 LOT IN COLUMBUS GEORGIA, mentioned above, _____ account number _____.

d. All credit card debt in Respondent, TOKES TOSIN ADELEYE'S name.

e. All debt in Respondent, TOKES TOSIN ADELEYE'S name.

The court finds that it would be fair and equitable for the Court to award to each property now in his or her possession as separate property.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that each party take as his or her separate property all property not otherwise disposed of by this Decree, now in his or her possession, and that each party assume all indebtedness against such property so awarded to him or her.

The Court finds that no unmarried children now under the age of eighteen years were born to or adopted by this marriage and that none is expected.

11

All costs of Court extended herein are taxed against the party incurring the cost, for which let execution issue if not timely paid.

IT IS ORDERED that all relief requested in this case and not expressly granted is denied."

During the temporary orders hearing and the final trial of the underlying case, no evidence of any marriages of the parties that occurred prior to the MAY 18, 1984, such as a marriage license or marriage certificate, was produced and entered into evidence or even attempted to be entered into evidence.

# SUMMARY OF THE ARGUMENT

The finding that the parties were married in Nigeria, on May 18, 1984, without impediments, was a just and right finding by the trier of fact and the facts support that finding.

Appellant received ample notice that an expert in Nigerian traditional weddings would testify.

The Trial Court had in personam jurisdiction over the Appellee and the Appellant.

The Trial Court had in rem jurisdiction over the property the subject of the lawsuit.

# ARGUMENT

<u>Reply to Appellant's Issue No. 1</u>
**<u>The finding that the parties were married in Nigeria, on May 18, 1984, without impediments, was a just and right finding by the trier of fact and the facts support that finding.</u>**

In order to promote the public health and welfare and to provide the necessary records, this code specifies detailed rules to be followed in establishing the marriage relationship. However, in order to provide stability for those entering into the marriage relationship in good faith and to provide for an orderly determination of parentage and security for the children of the relationship, it is the policy of this state to preserve and uphold each marriage against claims of invalidity unless a strong reason exist for holding a marriage void or voidable. Therefore, every marriage entered into in this state is presumed to be valid unless expressly made voidable by Chapter 6 and annulled as provided by that chapter. Texas Family Code, §1.101.

The law of this state applies to persons married elsewhere who are domiciled in this state. Texas Family Code §1.103.

14

The validity of the marriage in the United States depends on the parties' compliance with the foreign rules and foreign laws of the foreign country. Foreign marriages are recognized by the United States, as long as the marriage was entered into pursuant to the laws of the country where it is performed. Under the principle of comity, a marriage obtained in another country, that was entered into pursuant to the laws of the country where it is performed, receives full faith and credit in all other states and countries. Comity is a term used in international law and in the law governing relations between United States to describe an informal principle that nations extend certain courtesies to other nations, particularly to recognize the validity and effect of their executive, legislative, and judicial acts.

When two or more marriages of a person to different spouses are alleged, the most recent marriage is presumed to be valid as against each marriage that precedes the most recent marriage until one who asserts the validity of a marriage proves the validity of the prior marriage. Texas Family Code, §1.102.

Texas Family Code, Chapter 6, §6.202, entitled, "Marriage During Existence of Prior Marriage." (a) states, "A marriage is void if entered into when either party has an existing marriage to another person that has not been dissolved by legal action or terminated by the death of the other spouse."

During the temporary orders hearing and the final trial of the underlying case, no evidence of any marriages of the parties that occurred prior to the MAY 18, 1984, such as a marriage license or marriage certificate, was produced and entered into evidence or even attempted to be entered into evidence. Appellant did not orally request a motion for continuance or file a written motion for continuance at any time during the litigation of this case to retrieve additional evidence to support a marriage prior the marriage of the parties. In fact, Appellant opposed the motion for continuances filed by Appellee on June 30, 2014, July 30, 2014 and August 29, 2014 and announced ready for trial.

The testimonial evidence at the temporary orders hearing, held on January 7, 2014, pertaining to the marriage, was as follows:

Q "Did you marry me honestly? A "Yeah." (DRR, Volume 1, Page 19, Lines 11-12)

Q "Did you observe them living together as husband and wife? A "Yes." Q "Did everybody in the family recognize them as being husband and wife? A "Yes." (DRR, Volume 1, Page 22, Lines 1 -2).

Q "Why do you say that you recognize them as being husband and wife?" (DRR, Volume 1, Page 22, Lines 6-7). A "Well, back in 1983 Margaret came to Nigeria, she was pregnant with her first child." (DRR, Volume 1, Page 22, Lines 8-9). "So I was instrumental into the traditional marriage that occurred back in Nigeria back in 1984." (DRR, Volume 1, Page 22, Lines 9-11) "If I'm not mistaken." (DRR, Volume 1, Page 22, Line 11). "I must have written a letter for the traditional wedding that took place in Nigeria." (DRR, Volume 1, Page 22, Lines 11-12). "The purpose of this is the family of Tokes will come and ask for Margaret's had in marriage, which was what happened, and a celebration ensued after that." (DRR, Volume 1, Page 22, Lines 13-15).

"And shortly after that was when I moved to the U.S. and she had the first child before I came because she had Margaret in July and I came in August of this year." (DRR, Volume 1, Page 22, Lines 15-18). Q "Were you present at the traditional wedding that they had in Nigeria?:" (DRR, Volume 1, Page 22, Lines 19-20). A "Yes, I was." (DRR, Volume 1, Page 22, Line 21). Q. "Is that recognized as a legal marriage in Nigeria?" (DRR, Volume 1, Page 22, Line 21). Q "Is that recognized as a legal marriage in Nigeria?" (DRR, Volume 1, Page 22, Lines 22). A. "Yes, it is." (DRR, Volume 1, Page 22, Line 23) Q. "And if people come to the United States, are they still considered married?" (DRR, Volume 1, Page 22, Lines 24-25). "They're married in Nigeria with that ceremony?" (DRR, Volume 1, Page 22, Line 25 and Page 23, Line 1). A. "Yes because the two parties – husband's – the man's family has to ask the woman's hand in marriage before the father and the mother so that both families are present in that." (DRR, Volume 1, Page 23, Lines 2-5). "And that's exactly the same type of marriage that I had too." (DRR, Volume 1, Page 23, Lines 5-6). Q. "When does the marriage actually occur?" (DRR, Volume 1, Page 23, Line 7).

A. "This marriage for tem occurred in Margaret's parents' home because the family of Tokes has to come --- ." (DRR, Volume 1, Page 23, Lines 8-9).  THE COURT: "Is there and official that performs the ceremony that you know of?" (DRR, Volume 1, Page 23, Lines 10-11). THE WITNESS: "No , No. What happens is they write a letter of proposal and then they bring what is considered dowry and other for the marriage ceremony.". (DRR, Volume 1, Page 23, Lines 12-14) "And then after that, of course, then the ceremony, there's the celebration and they are considered husband and wife." (DRR, Volume 1, Page 23, Lines 14-16).  THE COURT: "What actually records the marriage?" (DRR, Volume 1, Page 23, Line 17) THE WITNESS: "Not in Nigeria. Nobody records the marriage, not as far as I know." (DRR, Volume 1, Page 23, Lines 18-19).  Q (BY MR. HAYNES) "Was there a dowry presented and were there things – "(DRR, Volume 1, Page 23, Lines 20-21).  A. "Things are presented." (DRR, Volume 1, Page 23, Line 22). "That's the custom." (DRR, Volume 1, Page 23, Line 22). "That is the custom when you do a traditional wedding." (DRR, Volume 1, Page 23, Lines 22-23).

"Things are presented from his side of the family to our side of the family because they are the ones asking for her hand in marriage." (DRR, Volume 1, Page 23, Lines 22-25). Q. "Do the people who are getting married have to be present at the wedding at all?" (DRR, Volume 1, Page 23, Lines 1-2) A. "No. No." (DRR, Volume 1, Page 23, Lines 1-2). Q. "Is it still considered a legal marriage in Nigeria even if they are not present?" (DRR, Volume 1, Page 24, Lines 4-5). A. "Yes." (DRR, Volume 1, Page 24, Line 6). Q. "And that marriage is also considered to be a legal marriage in the United States when you come here and you shoe that that's recognized as a legal marriage?" (DRR, Volume 1, Page 24, Lines 7-9). A. "As far as I know." (DRR, Volume 1, Page 24, Line 10).

The testimonial evidence at the final trial on the First Amended Original Petition For Divorce, held on September 23, 2014 and September 24, 2014, pertaining to the marriage, was as follows:

20

Q. "Are you married to the Respondent who is Tokes Adeleye?" (ORR, Volume 2, Page 8, Lines 7-8). A. Yeah." (ORR, Volume 2, Page 8, Line 9). Q. "And, Ms. Driscal, you've alleged in your petition that you and Mr. Tokes Adeleye were formally married on May the 18th of 1984; is that correct?" (ORR, Volume 2, Page 8, Lines 21-24. A. "Yeah." (ORR, Volume 2, Page 8, Line 24). Q. "And you're asking the Court to find that that formal marriage was a valid marriage; is that correct?" (ORR, Volume 2, Page 8, Line 25 and Page 9, Line 1). A. "Yeah." (ORR, Volume 2, Page 9, Line 2). "It was a traditional marriage in Nigeria." (ORR, Volume 2, Page 9, Line 2). Q. "Is this a formal marriage or common law at this point?" (ORR, Volume 2, Page 13, Lines 12-13). A. "It's a traditional marriage in Nigeria." (ORR, Volume 2, Page 13, Line 14). "And what happens is the guy is going to call or inform his family that he's found somebody he wants to marry and the family is going to go on his behalf." (ORR, Volume 2, Page 13, Lines 14-17). "They are going to write a letter to ask for the girl's hand in marriage and they will arrange the dates where they will do the ceremony and this is the letter." (ORR, Volume 2, Page 13, Lines 17-20).

21

Q. " Okay." (ORR, Volume 2, Page 15, Line 1). "All right." (ORR, Volume 2, Page 15 Line 1). "Have you known anyone else who has gone through this traditional type marriage that we have right here?" (ORR, Volume 2, Page 15, Lines 1-3). A. "Yes." (ORR, Volume 2, Page 15, Lines 4). Q. "And has that marriage --- was that marriage acknowledged wen they came to the United Sates as being married." (ORR, Volume 2, Page 15, Lines 5-7). A. "I believe so." (ORR, Volume 2, Page 8, Line 8).

Q. "After you had that formal marriage, in May 18, 1984, did the two of you ever live together?" (ORR, Volume 2, Page 21, Lines 24-25 and Page 22, Line1.). A. "Yeah." (ORR, Volume 2, Page 22, Lines 2). Q. "When did you start living together?" (ORR, Volume 2, Page 22, Lines 3. A. "We started living together in 1983." (ORR, Volume 2, Page 22, Lines 4). Q. "And where did you live together?" (ORR, Volume 2, Page 22, Line 5). A. "I was in Huntsville, Alabama." (ORR, Volume 2, Page 8, Line 6). Q. "And are you saying Mr. Adeleye was living together with you in Huntsville, Alabama?" (ORR, Volume 2, Page 22, Lines 7-8). A. "I moved to Alabama to join him." (ORR, Volume 2, Page 22, Line 9).

Q. "Okay." (ORR, Volume 2, Page 22, Line 10). A. "Yeah." (ORR, Volume 2, Page 22, Line 11). Q. "And did you agree to live together as husband and wife while you were in Huntsville?" (ORR, Volume 2, Page 22, Lines 12-13). A. "Yes." (ORR, Volume 2, Page 22, Line 14). Q. "And you – did you represent to other people that you were married while you were in Huntsville?" (ORR, Volume 2, Page 22, Lines 15-16). A. "No, because I don't thing the ceremony was done while we were in Huntsville." (ORR, Volume 2, Page 22, Lines 17-18). Q. "After the ceremony was done, did you represent to people that you were married?" (ORR, Volume 2, Page 22, Lines 19-20). A. "Oh, yeah." (ORR, Volume 2, Page 22, Lines 20). Q. "Who did you represent to that you were married?" (ORR, Volume 2, Page 22, Lines 22-23). A. "Neighbors, friends, his family, his sister, his brother." (ORR, Volume 2, Page 22, Lines 24-25).

Q . "And you were together in Atlanta, Georgia?" (ORR, Volume 2, Page 23, Line 23). A. "Oh, yeah." (ORR, Volume 2, Page 23, Line 22). Q. "What year was that?" (ORR, Volume 2, Page 23, Lines 23). A. "We lived in – actually went to visit in Nigeria December 1983." (ORR, Volume 2, Page 23, Lines 24-25). "And before I came back, we had arranged to move to Atlanta and he did the moving." (ORR, Volume 2, Page 23, Lines 24-25 and Page 24, Line 1). "So when I fly back, I flew straight to Georgia to Atlanta to join him." (ORR, Volume 2, Page 24, Lines 1-2). "So we live together in Atlanta form that time until we move to Texas." (ORR, Volume 2, Page 24, Lines 3-4).

Q. "During the time you were here in Houston, Texas? (ORR, Volume 2, Page 32, Line 3). A. "Yes." (ORR, Volume 2, Page 32, Lines 4). Q. "You two were still sharing expenses while he was here in Houston, Harris County, Texas; is that correct?" (ORR, Volume 2, Page 32, Lines 5-6). A. "Yeah." (ORR, Volume 2, Page 32, Lines 7).

Q. "And what were they written to you for?" (ORR, Volume 2, Page 36, Line 4). "What were they paying for?" (ORR, Volume 2, Page 36, Lines 4-5). A. "For expenses to get the bills and everything we needed." (ORR, Volume 2, Page 36, Lines 6-7). Q. "And that's for the house that you had here in Houston, Texas; is that correct?" (ORR, Volume 2, Page 36, Lines 8-9). A. "Yeah, for the house here in Houston." (ORR, Volume 2, Page 36, Lines 10). Q. "And is it your contention that by him sharing the expenses that that's proof that he had an ongoing relationship and a marriage with you?" (ORR, Volume 2, Page 36, Lines 11-13). A. "Yeah, because I was a homemaker." (ORR, Volume 2, Page 36, Line 14). "I took care of the girls because he kept two home and he was moving back and forth." (ORR, Volume 2, Page 36, Lines 14-16). Q. "Okay." (ORR, Volume 2, Page 36, Line 17). A. "So he was paying for the bills here." (ORR, Volume 2, Page 36, Line 18).

A. "Twelve is a family photograph that we took when his mom cam to visit us in the U.S. here in Houston." (ORR, Volume 2, Page 41, Lines 16-18). THE COURT: "I don't want you to tell us anything right now other that what that document is." (ORR, Volume 2, Page 41, Line 19-20). "It's a photograph." (ORR, Volume 2, Page 41, Line 21). A. "Okay." (ORR, Volume 2, Page 41, Line 21). "A photograph, yeah, a family photograph." (ORR, Volume 2, Page 41, Line 22). THE COURT: "Okay." (ORR, Volume 2, Page 41, Line 23). Q. (BY MR. HAYNES) "And, ma'am, in that photograph are you depicted in that photograph?" (ORR, Volume 2, Page 41, Lines 24-25). A. "Yes." (ORR, Volume 2, Page 42, Line 1). Q. "Is Mr. Tokes Adeleye in that photograph?" (ORR, Volume 2, Page 42, Line 2). A. "Yes." (ORR, Volume 2, Page 42, Line 3). Q. "And about what time period – do you know when that was taken?" (ORR, Volume 2, Page 42, Lines 4-5). "Was that in Atlanta or was that in Nigeria, was that in Houston?" (ORR, Volume 2, Page 42, Lines 5-6). A. "No, here in Houston." (ORR, Volume 2, Page 42, Lines 7).

Q. "Okay. And. Mrs. Driscal, could you please tell the Court why it is that you think that this Court should find either that there was a formal marriage in Nigeria or that that there was a common law marriage that existed between you and Mr. Adeleye?" (ORR, Volume 2, Page 56, Lines 2-6). A. "Because even before the ceremony, we lived together." (ORR, Volume 2, Page 56, Lines 7-8). "And that's been since 1983. (ORR, Volume 2, Page 56, Lines 8). "And he's been responsible for our expenses and everything in Houston." (ORR, Volume 2, Page 56, Lines 8-9). "We came together to Houston to look for the house." (ORR, Volume 2, Page 56, Line 10). "We found a house, got the house and we moved in." (ORR, Volume 2, Page 56, Lines 10-11). "We made three or four trips to Houston and the witness is here." (ORR, Volume 2, Page 56, Lines 11-12). "His brother is here, his sister is here that know about everything." (ORR, Volume 2, Page 56, Lines 13-14.

Q. "Okay. But you still believe that the marriage actually initiated in 1984 in Nigeria as a formal marriage, correct?" (ORR, Volume 2, Page 58, Lines 11-12). A. "Yes." (ORR, Volume 2, Page 58, Lines 14). Q. "And you are not withdrawing that; is that correct?" (ORR, Volume 2, Page 58, Lines 11-13). A. "Right." (ORR, Volume 2, Page 58 Line 17).

THE COURT: "Okay. I'm going to allow this witness to testify as an attorney who is licensed in Nigeria and to give his opinion, expert opinion, in that regard with regard to the family law in Nigeria." (RR, Volume 1, Page 15, Lines 7-8). Q. "Is that marriage recognized in the United States?" (RR, Volume 1, Page 17, Line 1). A. "It is. " (RR, Volume 1, Page 17, Lines 2). Q "And have --- in your immigration practice have you used that as a valid marriage in the United State?" (RR, Volume 1, Page 27, Lines 3-4). A. 'I have." (RR, Volume 1, Page 17, Line 5). Q. "Does the United States accept that as being a valid marriage." (RR, Volume 1, Page 17, Lines 6-7). A. "I have. And Chapter 2 of United States Citizenship and Immigration Service Policy Manual recognizes customary law and customary law by proxy, as far it's consummated." (RR, Volume 1, Page 17, Lines 8-11). Q. "What does customary law by proxy mean?" (RR, Volume 1, Page 17, Line 12). A. "Customary law by proxy means getting married without the parties being physically present." (RR, Volume 1, Page 17, Lines 13-14). Q. "Would you explain how that works?" (RR, Volume 1, Page 17, Line 15). A. "How it works is that both families – the family of the --- the family of the bride and groom will meet with the agreement, which is consent --- implied, express – or consent by certification of the spouse --- two spouses." (RR, Volume 1, Page 17, Lines 16-19). "They will meet, agree on the bride price, which is to be paid by the groom." (RR, Volume 1, Page 17, Lines 20-21).

28

Q. (BY MR. HAYNES) When you have this proxy wedding in Nigeria, who is present at the proxy wedding? (RR, Volume 1, Page 18, Lines 21-22). A. "Families or any representative from both families and then at least two witnesses." (RR, Volume 1, Page 18, Lines 23-24).

Q. "And once that is done, are these parties legally married in Nigeria?" (RR, Volume 1, Page 19, Lines 2-3). A. "They are legally married." (RR, Volume 3, Page 19, Line 4). Q. "Are they legally married in the United States?" (ORR, Volume 1, Page 19, Line 5). A. "They are legally married in the United States." (RR, Volume 1, Page 15, Line 6). Q. "And you're telling me that in order for this to occur, both of the families of the bride and the groom have to get together and have an agreement to such?" (RR, Volume 1, Page 19, Lines 7-9). A. "That's correct." (RR, Volume 1, Page 19, Lines 10). "And it is recognized in the United States for purposes of immigration as far as the marriage is consummated." (RR, Volume 1, Page 17, Lines 10-12). "It is varied for purposes of immigration, and it's recognized by Chapter 2 of the United States Citizenship and Immigration Services Policy Manual." (RR, Volume 1, Page 19, Lines 13-16).

Q. "I just want to recap and make sure we understand." (RR, Volume 1, Page 17, Lines 17-18). "You are saying that it is possible to be married in Nigeria without the two parties being present?" (RR, Volume 1, Page 19, Lines 19-20). A. "It is possible, and I have also had a traditional marriage." (RR, Volume 1, Page 19, Lines 21-22). Q. "You had a traditional marriage such as the one you just indicated?" (RR, Volume 1, Page 19, Lines 23-24). A. "By proxy." (RR, Volume 1, Page 19, Lines 25). "I was not there." (RR, Volume 1, Page 19, Line 25). "My wife was not there." (RR, Volume 1, Page 19, Line 25 and Page 20, Line 1). "The two families met together." (RR, Volume 1, Page 20, Line 1). "We got married.' (RR, Volume 1, Page 20, Line 1). "My wife is also here in the United States; and she is a family law attorney here in the US, in Texas." (RR, Volume 1, Page 20, Lines 2-3).

Q. "And your last name is Adleye." (RR, Volume 1, Page 28, Line 10). "Are you related to the Respondent in this case?" (RR, Volume 1, Page 28, Lines 10-11). A. "Yes." (RR, Volume 1, Page 28, Line 12). "That's my brother --" (RR, Volume 1, Page 28, Line 12). Q. "How are you related to him?" (RR, Volume 1, Page 28, Line 13. A. "That's my brother." (RR, Volume 1, Page 28, Line 14). Q. "And what we want to do is we want to just go ahead and get to the point." (RR, Volume 1, Page 28, Lines 15-16). A. "Okay." (RR, Volume 1, Page 28, Lines 17). Q. "Is it true that there was a marriage or wedding ceremony between Ms. Margaret Driscal and Mr. Tokes Adeleye (sic) in Nigeria on May 18th 1984?" (RR, Volume 1, Page 28, Lines 18-20). A. "Okay." (RR, Volume 1, Page 28, Line 21). "There was an engagement" (RR, Volume 1, Page 28, Lines 7-21). – Q. "Yes." (RR, Volume 1, Page 28, Line 21). A. "--- in Nigeria," (RR, Volume 1, Page 28, Line 23.

THE COURT: "Was there a marriage in Nigeria, sir, or an engagement?" (RR, Volume 1, Page 29, Lines 6-7). THE WITNESS: "It is called, in Nigeria, it is a traditional wedding; and it's called "engagement." (RR, Volume 1, Page 29, Lines 8-9). MR. HAYNES: "Okay." (RR, Volume 1, Page 29, Line 10). THE COURT: "And an engagement is actually a marriage." (RR, Volume 1, Page 29, Lines 11-12). THE WITNESS: "Yes. ma'am." (RR, Volume 1, Page 29, Line 13). THE COURT. "Okay." (RR, Volume 1, Page 29, Lines 14). "Thank you." (RR, Volume 1, Page 29, Line 14). Q. (BY MR. HAYNES) "Okay. Now Mr. Adeleye, were you present at that wedding in Nigeria in May 18th of 1984." (RR, Volume 1, Page 29, Lines 15-17). A. "I was." (RR, Volume 1, Page 29, Line 18).

Q. "Were there people from both sides of the family there, from your side of the family as well as Ms. Driscal's side of the family, at the ceremony." (RR, Volume 1, Page 30, Lines 1-3). A. "Yes." (RR, Volume 1, Page 30, Line 48). Q. "And Ms. Adefunke Lamidi, who was a witness, was she at that ceremony, also, too? (RR, Volume 1, Page 30, Lines 5-6). A. "Yeah." (RR, Volume 1, Page 30, Lines 7). "That's my sister.' (RR, Volume 1, Page 30, Lines 7).

32

Q. "What I want to ask you at this particular time is whether or not your family recognize Ms. Driscal and Mr. Adelye (sic) as being married." (RR, Volume 1, Page 30, Lines 21-23). A. "Yes." (RR, Volume 1, Page 30, Line 4).

Q. "And did they hold themselves out to you as being married?" (RR, Volume 1, Page 30, Line 25 and Page 31, Line 1). A. "Yes." (RR, Volume 1, Page 31, Line 2). "They were living together." (RR, Volume 1, Page 31, Lines 2). Q. "And did they act as husband and wife in any capacity that you know of?" (RR, Volume 1, Page 31, Lines 3-4). "Did they perform as though –" (RR, Volume 1, Page 31, Lines 4-5). A. "Yeah." (RR, Volume 1, Page 31, Line 6). Q. – "they were husband and wife?" (RR, Volume 1, Page 31, Line 7). A. "They have children together." (RR, Volume 1, Page 31, Line 8). "I mean, we – I visited them --- I --- I've been to their house in – in –" (RR, Volume 1, Page 31, Lines 9-10). A." – Houston." (RR, Volume 1, Page 31, Line 12).

Q. "You're living in Houston, Texas, now; is that correct?" (RR, Volume 1, Page 32, Lines 8-9). A. "Yes, I do." (RR, Volume 1, Page 32, Line 10). Q. "And did you – have you seen Mr. Adeleye and Ms. Driscal here together in Houston, Texas, while you were here?" (RR, Volume 1, Page 32, Lines 14-16). A. "Of course." (RR, Volume 1, Page 32, Lines 7-8). Q. "Many Times?" (RR, Volume 1, Page 32, Lines 18). A. "Yeah.' (RR, Volume 1, Page 32, Lines 19). Q. "And did they have a house that they were staying in?" (RR, Volume 1, Page 32, Lines 20-21). A. "Yes, in Katy." (RR, Volume 1, Page 32, Line 22).

BY MR. ADELEYE: Q. "Have you ever visited my house with me there in Katy?" (RR, Volume 1, Page 35, Lines 24-25). A. "Yes." (RR, Volume 1, Page 36, Lines 1). Q. "When was this?" (RR, Volume 1, Page 36, Line 2). A. "Several times." (RR, Volume 1, Page 36, Line 3). Q. In my house in Katy? (RR, Volume 1, Page 36, Line 4). A. "Yeah." (RR, Volume 1, Page 36, Line 5). Q. "With me there in the house?" (RR, Volume 1, Page 36, Line 6). A. "Yes." (RR, Volume 1, Page 36, Line 7). "When you first bought the house, you took me there in 2006. Or 2007, when I came to the US." (RR, Volume 1, Page 36, Lines 7-8).

34

THE COURT. "And do you know if your brother was ever married to a woman named Michelle James?" (RR, Volume 1, Page 44, Line 25 and Page 45, Line 1). THE WITENSS: "No." (RR, Volume 1, Page 45, Line 2). "Never heard of that name." (RR, Volume 1, Page 45, Line 2). THE COURT : "Okay." (RR, Volume 1, Page 45, Line 3). "Thank you. sir. You can step down." (RR, Volume 1, Page 45, Lines 3-4).

THE COURT: "And, so, what I'm asking you is: What proof do you have that you were married on that date?" (RR, Volume 1, Page 58, Lines 13-14). MR. ADELEYE: "I have – it's on the – I'll look for it. It's on – if I don't have it, it's – I think I have it." (RR, Volume 1, Page 58, Lines 15-17). "It's a transcript that they gave me --- " (RR, Volume 1, Page 58, Line 17). THE COURT: "Do you have a marriage certificate?" (RR, Volume 1, Page 58, Lines 18-19). MR. ADELEYE: "I used to have the  marriage since we divorced., I think I gave all that --- I don't know what I did with it after the divorce, but I divorced her in 1998." (RR, Volume 1, Page 58, Lines 20-23). THE COURT: "Okay. But it doesn't state the date you married ---" (RR, Volume 1, Page 58, Lines 24-25). MR. ADELEYE: "Yes." (RR, Volume 1, Page 59, Line 1). THE COURT: "-- Ms. James." (RR, Volume 1, Page 59, Line 2). MR. ADELEYE: "Yes." (RR, Volume 1, Page 59, Line 3).

35

THE COURT: "So, do you have any documentation that states the date that you were married to Ms. James that would be able to be admitted?" (RR, Volume 1, Page 59, Lines 4-6). MR. ADELEYE: "Yes, Your Honor." (RR, Volume 1, Page 59, Lines 7).

THE COURT: "Okay." (RR, Volume 1, Page 59, Line 8). MR. ADELEYE: "I will --- I'll go – if you give me some time ---" (RR, Volume 1, Page 59, Lines 9-10). THE COURT: "Yes, sir." (RR, Volume 1, Page 59, Lines 11). MR. ADELYE: "This is a letter from my attorney at the time that's –" (RR, Volume 1, Page 59, Lines 15-16) THE COURT: "And I need you to show that to Mr. Haynes before I can look at it." (Sotto voce discussion between Mr. Haynes and Mr. Adeleye) (RR, Volume 1, Page 59, Lines 17-20). MR. HAYNES: "Yes, Your Honor. I object to that as being hearsay." (RR, Volume 1, Page 59, Lines 21-22). THE COURT: "And I'm going to sustain that." (RR, Volume 1, Page 59, Line 23). "If its not a certified copy --- " (RR, Volume 1, Page 59, Line 24). MR. ADELEYE: "It's not certified.' (RR, Volume 1, Page 59, Line 25). "It's from my – it's from an attorney." (RR, Volume 1, Page 59, Line 25 and Page 60, Line 1). THE COURT: "And I'm going to mark that as R-5, but I'm not going to admit that." (RR, Volume 1, Page 60, Lines 2-3). "But I'm going to need the copy for now, and then I will make copies ---" (RR, Volume 1, Page 60, Lines 3-4). MR. ADELEYE: "Yes." (RR, Volume 1, Page 60, Line 5). "Sorry Judge, yes." (RR, Volume 1, Page 60, Line 5).

36

THE COURT: "-- to substitute for the original." (RR, Volume 1, Page 60, Lines 6-7). MR. ADELEYE: "Original, yes." (RR, Volume 1, Page 60, Line 8-4). THE COURT: "So, do you have any other documentation that you were married prior to the May 18TH 1984, marriage that allegedly occurred in Nigeria?" (RR, Volume 1, Page 60, Lines 11-13). "Do you have any documentation?" (RR, Volume 1, Page 60, Lines 13-14). MR. ADELEYE: "No. No. Nigeria?" (RR, Volume 1, Page 60, Line 10). "No, I did not marry in Nigeria." (RR, Volume 1, Page 60, Lines 15-16). THE COURT: "No, sir." (RR, Volume 1, Page 60, Line 17). " I want you to listen to my question." (RR, Volume 1, Page 60, Lines 17-18). "Do you have any documentation that you were married to anyone prior to the alleged marriage in Nigeria on May 18th, 1984?" (RR, Volume 1, Page 60, Lines 19-21). "So, you have any documentation showing you were married to someone else before the date May 18, 1984?" (RR, Volume 1, Page 60, Lines 21-23). MR. ADELEYE: "In my possession, no." (RR, Volume 1, Page 60, Line 24). "But other than that, that's all I have." (RR, Volume 1, Page 60, Lines 24-25). "Yes --" (RR, Volume 1, Page 60, Line 25).

THE COURT: "The Court finds that the marriage between the parties on May 18th, 1984, is valid based on the evidence presented to this Court." (RR, Volume 1, Page 64, Lines 6-8).

The exhibits entered into evidence at the final trial on the First Amended Original Petition For Divorce, held on September 23, 2014 and September 24, 2014, pertaining to the marriage, were as follows:

Petitioner's No. 1, Application For Your Daughter's Hand in Marriage

Petitioner's No. 4, Letter from Tokes Tosin Adeleye to Margaret Driscal

Petitioner's No. 12, Photo

Petitioner's No. 13, Photo

Petitioner's No. 19, Post Card From Tokes Tosin Adeleye to Margaret Driscal

Petitioner's No. 20, Post Card From Tokes Tosin Adeleye to Margaret Driscal

Petitioner's No. 21, Post Card From Tokes Tosin Adeleye to Margaret Driscal

Petitioner's No. 23A, Copy of Check No. 4083

Petitioner's No. 24, Copy of Check No. 4430

Petitioner's No. 25, Copy of Check No. 4206

Petitioner's No. 26, Copy of Check No. 4170

Petitioner's No. 27, Copy of Check No. 4158

Petitioner's No. 28, Copy of Check No. 4175

Petitioner's No. 29, Copy of Check No. 4094

Petitioner's No. 30, Copy of Check No. 4113

Petitioner's No. 31, Copy of Check No. 4117

Petitioner's No. 32, Copy of Check No. 4129

Petitioner's No. 33, Copy of Check No. 4145

Petitioner's No. 34, Copy of Check No. 4302

Petitioner's No. 35, Copy of Check No. 4311

Petitioner's No. 36, Copy of Check No. 4340

Petitioner's No. 37, Copy of Check No. 4349

Petitioner's No. 38, Copy of Check No. 4364

Petitioner's No. 39, Copy of Check No. 4382

Petitioner's No. 40, Copy of Check No. 4387

Petitioner's No. 41, Copy of Check No. 4411

Petitioner's No. 42, Copy of Check No. 4412

Petitioner's No. 43, Copy of Check No. 4398

Petitioner's No. 44, Copy of Check No. 4324

Petitioner's No. 45, Copy of Check No. 4157

Petitioner's No. 46, Copy of Check No. 4168

Petitioner's No. 47, Copy of Check No. 4180

Petitioner's No. 48, Copy of Check No. 4442

Petitioner's No. 49, Copy of Check No. 4444

Petitioner's No. 50, Copy of Check No. 4443

Petitioner's No. 51, Copy of Check No. 4189

Petitioner's No. 52, Copy of Check No. 4197

Petitioner's No. 53, Copy of Check No. 4431

Petitioner's No. 54, Copy of Check No. 4231

Petitioner's No. 55, Copy of Check No. 4248

Petitioner's No. 56, Copy of Check No. 4683

Petitioner's No. 57, Copy of Check No. 4686

Petitioner's No. 58, Copy of Check No. 4282

Petitioner's No. 59, Copy of Check No. 4459

Petitioner's No. 60, Copy of Check No. 4474

Petitioner's No. 61, Copy of Check No. 4528

Petitioner's No. 62, Copy of Check No. 4511

Petitioner's No. 63. Copy of Resume of Michael Ejeh

During the temporary orders hearing and the final trial of the underlying case, no evidence of any marriages of the parties that occurred prior to the MAY 18, 1984, such as a marriage license or marriage certificate, was produced and entered into evidence or even attempted to be entered into evidence.

A party may not rely on new evidence in a motion for new trial without showing that the evidence was newly discovered and could not have been discovered through due diligence prior to trial. *Fantasy Ranch, Inc. v. City of Arlington*, 193 S.W. 3d 605, 615 (Tex. App. – Fort Worth 2006, pet. denied*); McMahan v. Greenwood*, 108 S.W. 3d 467, 500 (Tex. App. – Houston [14TH Dist.] 2003, pet. denied).

To preserve a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely objection that stated the grounds for the ruling sought with sufficient specificity unless those grounds are apparent, and that the trial court ruled or refused to rule on the objection. Tex. R. App. P. 33.1 (a). We cannot reverse a judgment in a civil case based on unassigned error. *Pat Baker Co. v. Wilson*, 971 S.W. 2d 447, 450 (Tex. 1998) (per curium*) Exxon Mobil Corp. v. Hines*, 252 S.W. 3d. 496, 507 (Tex. App. – Houston [14TH Dist.] 2008, pet. denied.

41

The Court, after hearing the evidence and arguments of counsel and the parties, found that the parties were married in NIGERIA, on MAY 18, 1984, and therefore the marriage is valid. The Court ORDERED, ADJUDGED, AND DECREED that the marriage of MAY 18, 1984, in NIGERIA, of MARGARET MODUPE DRISCAL, Petitioner, also know as MARGARET MODUPE EGUN, and TOKES TOSIN ADELEYE, Respondent, is valid.

## Reply to Appellant's Issue No. 2
## Applellant received ample notice that an expert in Nigerian traditional weddings would testify.

The expert witness, MICHAEL I. EJEH, was listed as an expert witness on Nigerian weddings in the Petitioner Margaret Modupe Driscal's First Amended Designation of Fact and Expert Witnesses, dated July 11, 2014. Notice was provided to Appellant that Nigerian traditional weddings would be an issue on July 11, 2014, some three months before the final trial on the First Amended Original Petition For Divorce commenced, on September 23, 2014.

The exhibits entered into evidence at the final trial on the First Amended Original Petition For Divorce, held on September 23, 2014 and September 24, 2014, pertaining to the Appellant/Respondent receiving ample notice that an expert in Nigerian traditional weddings would testify were as follows:

Petitioner's No. 72, Copy of Petitioner Margaret Modupe Driscal's First Amended Designation of Fact and Expert Witnesses, Dated July 11, 2014, with facsimile confirmation page.

The expert witness, MICHAEL I. EJEH, testified that in fact he was married by proxy in Nigeria and Adeleye had the opportunity to cross-examine this witness and did cross-examine the witness. (RR, Volume 1, Page 20, Lines 10-25, Page 21, Lines 1-25, Page 22, Lines 1-25, Page 23, Lines 1-25, Page 24, Lines 1-19, Page 25, Lines 19-25, Page 26, Lines 1-25, Page 27, Line 1-20).

## Reply to Appellant's Issue No. 3
## The Trial Court had in personam jurisdiction over the Appellee and the Appellant.

Texas Family Code, Chapter 6, §6.301, entitled, "Jurisdiction, Venue, and Residence Qualifications, states " A suit for divorce may not be maintained in this state unless at the time the suit is filed either the petitioner or the respondent has been: (1) a domiciliary of the this state for the preceding six-month period; and (2) a resident of the county in which the suit is field for the preceding 90 – day period.

Texas Family Code, Chapter 6, §6.301, entitled, "Acquiring Jurisdiction Over Nonresident Respondent," (a) states, " If the petitioner in a suit for dissolution of a marriage is a resident or a domicilary of this state at the time the suit for dissolution is filed, the court may exercise personal jurisdiction over the respondent or over the respondent's personal representative although the respondent is not a resident of this state if: (1) this state is the last marital residence of the petitioner and the respondent ant the suit is filed before the second anniversary of the date on which marital residence ended; or (2) there is any basis consistent with the constitutions of this state and the United States for the exercise of the personal jurisdiction."

The testimonial evidence at the final hearing on the First Amended Original Petition For Divorce, held on September 23, 2014 and September 24, 2014 pertaining to the Courts jurisdiction over the Appellee was as follows:

Q. "At the time that you filed this divorce petition, where were you living?" (ORR, Volume 2, Page 7, Lines 21-22). A. "23015 Adwick Court in Katy, Texas 77450." (ORR, Volume 2, Page 7, Line 23). Q. "And was that in Harris County, Texas?" (ORR, Volume 2, Page 7, Line 24). A. "Yeah." (ORR, Volume 2, Page 7, Line 25). Q. "And how long have you resided in Harris County, Texas?" (ORR, Volume 2, Page 8, Lines 1-2). A. "Since 1997." (ORR, Volume 2, Page 8, Line 3). Q. "And you're the Petitioner of this proceeding; is that correct Ms. Driscal?' (ORR, Volume 2, Page 8, Lines 4-5). A. "Yes." (ORR, Volume 2, Page 8, Line 6).

Q. "And did they hold themselves out to you as being married?" (RR, Volume 1, Page 30, Line 25 and Page 31, Line 1). A. Yes. (RR, Volume 1, Page 31, Line 2). They were living together. (RR, Volume 1, Page 31, Line 2). Q. And did they act as husband and wife in any capacity that you know of? (RR, Volume 1, Page 31, Lines 3-4). Did they perform as though – . (RR, Volume 1, Page 31, Lines 4-5).

45

A. Yeah. . (RR, Volume 1, Page 31, Line 6). Q. – they were husband and wife? . (RR, Volume 1, Page 31, Line 7). A. They have children together. . (RR, Volume 1, Page 31, Line 8). I mean, we – I visited them --- I --- I've been to their house in – in – . (RR, Volume 1, Page 31, Lines 9-10). MR. ADELEYE. Objection, Your Honor. . (RR, Volume 1, Page 31, Line 11). A. – Houston. . (RR, Volume 1, Page 31, Line 12).

Q. Okay. You're living in Houston, Texas, now; is that correct? (RR, Volume 1, Page 32, Lines 8-9). A. Yes, I do. (RR, Volume 1, Page 32, Line 10). Q. And did you – have you seen Mr. Adeleye and Ms. Driscal here together in Houston, Texas, while you were here? (RR, Volume 1, Page 32, Lines 14-16). A. Of course. (RR, Volume 1, Page 32, Line 17). Q, Many Times? (RR, Volume 1, Page 32, Line 18). A. Yeah. (RR, Volume 1, Page 32, Line 19). Q. And did they have a house that they were staying in? . (RR, Volume 1, Page 32, Lines 20-21). A. Yes, in Katy. (RR, Volume 1, Page 32, Line 22).

Q. Have you ever visited my house with me there in Katy? (RR, Volume 1, Page 35, Lines 24-25).  A. Yes. (RR, Volume 1, Page 36, Line 1). Q. When was this? . (RR, Volume 1, Page 36, Line 2).  A. Several times. (RR, Volume 1, Page 36, Line 3).  Q. In my house in Katy?  (RR, Volume 1, Page 36, Line 4).  A. Yeah. (RR, Volume 1, Page 36, Line 5).  Q. With me there in the house? . (RR, Volume 1, Page 36, Line 6).  A. Yes.  (RR, Volume 1, Page 36, Line 7).  When you first bought the house, you took me there in 2006. Or 2007, when I came to the US. (RR, Volume 1, Page 36, Lines 7-8).

Appellant established minimum contacts with the state of Texas by repeated visit to Texas to complete business transactions, purchase property and litigate lawsuits, which is continuous and systematic activity in the state of Texas and comports with fair play and substantial justice. *In the Interest of S.A.V.*, 837 S.W. 2d. 80 (Tex. 1992). *Reynolds v. Reynolds*, 2 S.W. 3d. 429 (Tex. App. – Houston [1ST Dist.] (1999). Appellant cannot claim that a Texas has no jurisdiction over him when he participated in two (2) additional lawsuits in the state of Texas, *Margaret Driscal v. Tokes Adeleye*, Cause No. CV52C0346688, Justice of the Peace, Precinct 5, Place 2, Harris County, Texas (October 18, 2013 – April 14, 2014, as a Defendant) and *Tokes Adeleye v. Margaret Driscal*, Cause No. EV52C0348292, Justice of the Peace, Precinct 5, Place 2, Harris County, Texas (December 17, 2013 – January 7, 2014, as a Plaintiff).

A Court has jurisdiction over a party when the party makes a general appearance and not a special appearance. A general appearance is a waiver. Texas Rules of Civil Procedure Rule 120A, Rule 121, Rule 122 and Rule 123.

Appellant made a general appearance at the temporary orders hearing on January 7, 2014 and never filed a special appearance, plea to the jurisdiction or plea in abatement. Appellant made a general appearance at the final trial on the First Amended Original Petition for Divorce on September 23, 2014 and September 24, 2014 and never filed a special appearance, plea to the jurisdiction or plea in abatement.

The testimonial evidence at the temporary orders hearing, held on January 7, 2014 pertaining to the Courts jurisdiction over the Appellant was as follows:

MR. ADLEYE: "The purpose of Mrs. Driscal filing this bogus, frivolous and fraudulent lawsuit is to avert the eviction which is coming up at four o'clock today." (DRR, Volume 1, Page 35, Lines 10-12). "The main reason Mrs. Driscal purported this is to prevent me from evicting her from a house." (DRR, Volume 1, Page 36, Lines 10-11).

The testimonial evidence at the final hearing on the First Amended Original Petition For Divorce, held on September 23, 2014 and September 24, 2014 pertaining to the Courts jurisdiction over the Appellant was as follows:

49

Q. Okay. You're living in Houston, Texas, now; is that correct? (RR, Volume 1, Page 32, Lines 8-9). A. Yes, I do. (RR, Volume 3, Page 32, Line 10). Q. And did you – have you seen Mr. Adeleye and Ms. Driscal here together in Houston, Texas, while you were here? (RR, Volume 1, Page 32, Lines 14-16). A. Of course. (RR, Volume 1, Page 32, Line 17). Q, Many Times? (RR, Volume 1, Page 32, Line 18). A. Yeah. (RR, Volume 1, Page 32, Line 19). Q. And did they have a house that they were staying in? (RR, Volume 1, Page 32, Lines 20-21). A. Yes, in Katy. . (RR, Volume 1, Page 32, Line 22).

Q. Have you ever visited my house with me there in Katy? (RR, Volume 1, Page 35, Lines 24-25). A. Yes. (RR, Volume 1, Page 36, Line 1). Q. When was this? . (RR, Volume 1, Page 36, Line 2). A. Several times. (RR, Volume 1, Page 36, Line 3). Q. In my house in Katy? (RR, Volume 1, Page 36, Line 4). A. Yeah. (RR, Volume 1, Page 36, Line 5). Q. With me there in the house? . (RR, Volume 1, Page 36, Line 6). A. Yes. (RR, Volume 1, Page 36, Line 7). When you first bought the house, you took me there in 2006. Or 2007, when I came to the US. (RR, Volume 1, Page 36, Lines 7-8).

50

## Reply to Appellant's Issue No. 4
## The Trial Court had in rem jurisdiction over the property the subject of the lawsuit.

After a scrupulous and arduous search throughout the fifty (50) United State of America, Articles of Incorporation for a LONGTERM HEALTH CARE, INC. were never found. There is no proof presented at the temporary orders hearing held on January 7, 2014 or the Final Trial on September 23, 2014 and September 24, 2014 that the alleged corporation was ever formed. This places Adeleye in the position of a promoter of a corporation that was never legally formed or in existence at the time the property was acquired. A certified copy of the warranty deed which conveyed the property the subject of the underlying lawsuit to a corporation that was not in existence is attached as Appellee's Exhibit "1" and is incorporated by reference. A certified copy of the water district notice, signed by Adeleye as "Adeleye Tokes, C.E.O, Longterm Care, Inc.", a corporation that does not exist, is attached as Appellee's Exhibit "2" and is incorporated by reference.

A deed is an instrument in writing duly executed and delivered, conveying real estate. *Texas Elec. Ry. Co. v. Neale*, 244 S.W. 2d. 329 (Tex. Civ. App. Waco, 1951) judgment ref'd on other grounds. 151 Tex. 526, 252 S.W. 2d. 451 (1942). A deed in writing between two parties, signed by one of them and accepted by the other is a written contract and is treated as such by the courts. *Orbeck v. Allen*, 276 S,W, 947 (Tex. Civ. App. - Waco 1925). As a general rule, where a promoter enters into a contract in the name of a corporation that has not yet been formed, he is personally liable on the contract, absent an agreement with the contracting party that the promoter is not liable. *Davey v. Margarett Jordan Royalties, Inc.* Court of Appeals, Tyler, August 13, 2014, Not reported in S.W. 3d, 2014 WL 3939669, 12-13-00002-CV. *Aloe Ltd., Inc. v. Koch*, 735 S.W. 2d. 364, (Tec, Civ. App. – Corpus Christi, 1987, no writ). *Fish v. Tandy Corp.*, 948 S.W. 2d. 886, 887 (Tex. App. Fort Worth 1997, pet. denied).

Actions in relation to corporate property must ordinarily be brought in its corporate name, and its shareholders, as such may not maintain actions to recover possession of corporate property. *Wells v. Hiskett*, 288 S.W. 2d. 257 (Tex. Civ. App. – Texarkana, 1956) .

Appellant cannot claim that a Texas has no jurisdiction over the property the subject of the lawsuit when he participated in two (2) additional lawsuits in the state of Texas, with the property being the subject of the lawsuit, *Margaret Driscal v. Tokes Adeleye*, Cause No. CV52C0346688, Justice of the Peace, Precinct 5, Place 2, Harris County, Texas (October 18, 2013 – April 14, 2014, as a Defendant) and *Tokes Adeleye v. Margaret Driscal*, Cause No. EV52C0348292, Justice of the Peace, Precinct 5, Place 2, Harris County, Texas (December 17, 2013 – January 7, 2014, as a Plaintiff) A copy of the computer generated print-out for the two (2) cases and the answer filed by Appellant are attached as Appellee's Exhibits "3" "4" and "5" respectively and are incorporated by reference. In *Margaret Driscal v. Tokes Adeleye*, In Cause No. CV52C0346688, Justice of the Peace, Precinct 5, Place 2, Harris County, Texas (October 18, 2013 – April 14, 2014, as a Defendant), Appellant's response states, "Now comes Tokes Adeleye, the owner of the property 23015 Adwick Court, Katy, Texas 77450, acting Pro se." and "The property belongs to me and she does not have any right or legal authority over my property."

53

The testimonial evidence at the final hearing on the First Amended Original Petition For Divorce, held on September 23, 2014 and September 24, 2014 pertaining to the Courts in rem jurisdiction over the property the subject of the underlying case was as follows:

Q. "And did they hold themselves out to you as being married?" (RR, Volume 1, Page 30, Line 25 and Page 31, Line 1). A. "Yes." (RR, Volume 1, Page 31, Line 2). "They were living together." (RR, Volume 1, Page 31, Lines 2). Q. "And did they act as husband and wife in any capacity that you know of?" (RR, Volume 1, Page 31, Lines 3-4). "Did they perform as though –" (RR, Volume 1, Page 31, Lines 4-5). A. "Yeah." (RR, Volume 1, Page 31, Line 6). Q. – "they were husband and wife?" (RR, Volume 1, Page 31, Line 7). A. "They have children together." (RR, Volume 1, Page 31, Line 8). "I mean, we – I visited them --- I --- I've been to their house in – in –" (RR, Volume 1, Page 31, Lines 9-10). A." – Houston." (RR, Volume 1, Page 31, Line 12).

Q. Have you ever visited my house with me there in Katy? (RR, Volume 1, Page 35, Lines 24-25). A. Yes. (RR, Volume 1, Page 36, Line 1). Q. When was this? . (RR, Volume 1, Page 36, Line 2). A. Several times. (RR, Volume 1, Page 36, Line 3). Q. In my house in Katy? (RR, Volume 1, Page 36, Line 4). A. Yeah. (RR, Volume 1, Page 36, Line 5). Q. With me there in the house? . (RR, Volume 1, Page 36, Line 6). A. Yes. (RR, Volume 1, Page 36, Line 7). When you first bought the house, you took me there in 2006. Or 2007, when I came to the US. (RR, Volume 1, Page 36, Lines 7-8).

Q. Okay. You're living in Houston, Texas, now; is that correct? (RR, Volume 1, Page 32, Lines 8-9). A. Yes, I do. (RR, Volume 1, Page 32, Line 10). Q. And did you – have you seen Mr. Adeleye and Ms. Driscal here together in Houston, Texas, while you were here? . (RR, Volume 1, Page 32, Lines 14-16). A. Of course. (RR, Volume 1, Page 32, Line 17). Q, Many Times? (RR, Volume 1, Page 32, Line 18). A. Yeah. . (RR, Volume 1, Page 32, Line 19). Q. And did they have a house that they were staying in? (RR, Volume 1, Page 32, Lines 20-21). A. Yes, in Katy. . (RR, Volume 1, Page 32, Line 22).

Q. Have you ever visited my house with me there in Katy? (RR, Volume 1, Page 35, Lines 24-25). A. Yes. (RR, Volume 1, Page 36, Line 1). Q. When was this? . (RR, Volume 1, Page 36, Line 2). A. Several times. (RR, Volume 1, Page 36, Line 3). Q. In my house in Katy? (RR, Volume 1, Page 36, Line 4). A. Yeah. (RR, Volume 1, Page 36, Line 5). Q. With me there in the house? . (RR, Volume 1, Page 36, Line 6). A. Yes. (RR, Volume 1, Page 36, Line 7). When you first bought the house, you took me there in 2006. Or 2007, when I came to the US. (RR, Volume 1, Page 36, Lines 7-8).

THE COURT: What proof do you have that the home is owned -- ,MR. ADELEYE: Because -- THE COURT: -- by anyone other than yourself? Do you have any documentation? Do you have any documentation? MR. ADELEYE: Not at the moment. No. I don't have it on me THE COURT: Okay. MR. ADELEYE: Because I borrowed money to purchase the property. (RR, Volume 1, Page 76, Lines 22-25 and Page 77, Lines 1-6).

THE COURT: Did you buy the home in Katy outright? Did you pay cash for it or pay for it? MR. ADELYEY: Yes, I did. THE COURT: Okay. So there's no mortgage? MR ADELEYE: There is no mortgage, but it's not my money. I borrowed money to buy from the Company. So it's not – THE COURT: Okay. Do you have any documentation -- MR. ADELEYE: Yes, I do. THE COURT: -- that shows that you borrowed money from – MR. ADELEYE: Yes. THE COURT: -- the Company? MR. ADELEYE: No. No. No. I have – no. No. It's from – it was a personal loan from Nigeria that I used. (September 24, 2014, RR3, Page 85, Lines 1-17).

# REQUEST TO SUPPLEMENT CLERK'S RECORD

In preparing the Appellee's Brief, Driscal realized that several documents germane to the appeal have been omitted from the previously filed Clerk's Record. Contemporaneous with the filing of this Brief, Driscal is requesting a Motion to Supplement Clerk's Record to include these documents. Rather than seek a further extension of time to file the Brief, Driscal has elected to file it, without complete cites to the Supplemental Clerk's Record. True and correct copies of all documents which Driscal has requested to be added to the Clerk's Record have been attached to and incorporated by reference to this Brief as Appellee's Exhibit's "1", "2", "3", "4" and "5" respectively.

# ATTORNEY'S FEES AND COST

This suit has been brought for purposes of harassment, is in bad faith, and is frivolous. Accordingly, and pursuant to the Tex. Civ. Prac. & Rem. Code, and Rule 13 of the Tex. R. Civ. P, Driscal prays that he be entitled to recover reasonable attorneys' fees and cost that are expended in the defense of this appeal. Driscal is entitled under and pursuant to CHAPTER 38 ATTORNEY'S FEES, Civil Practice and Remedies Code, V.T.C.A., to recovery of reasonable attorney's fees, which Driscal alleges to be at least $10,000.00, and for which amount Driscal additionally request.

Driscal seeks all reasonable and necessary attorney's fees in this case which include the following:

    (a)  Preparation and Appellee's Brief of this appeal; and

    (b)  Legal Research

# PRAYER

For the foregoing reasons, Driscal prays:

1. That the original judgment of the 310TH Judicial District Court, Harris County, Texas be in all respect AFFIRMED; and

2. That the Honorable Court render a judgment in favor of Driscal in accordance with the original underlying judgment of the 310TH Judicial District Court, Harris County, Texas; and

3. That this Court of Appeals would uphold the ruling of the trial court; and

4. That all cost and attorney's fees incurred of $10,000.00, which is reasonable in relation to the amount of work expended, by reason of the appeal, be paid by Adeleye; and

5. That Driscal have all such other and further relief to which it may show itself to be justly entitled.

Dated JULY 20, 2015.

Respectfully submitted,

THEODORE HAYNES, JR.
Attorney for Appellee
Texas Bar No. 00787665
P.O. BOX 300833
HOUSTON, TEXAS 77230-0833
Telephone: (713) 660-7646
Telecopier: (713) 660-0203
E-mail: thaynesjr@prodigy.net

## CERTIFICATE OF COMPLIANCE

As required by the Texas Rules of Appellate Procedure 52.10 (a), I certify that I have notified or made a diligent effort to notify all parties by expedited means that this Appellee's Brief has been filed and this Appellee's Brief contains 10,650 (ten thousand and six hundred and fifty) words and has been prepared in a proportionally spaced typeface using Microsoft Word 1997 in 14-point Times New Roman font for text, which meets the typeface requirements.

SIGNED this _20th_ day of _July_, 20_15_.

_____
Theodore Haynes, Jr.
Attorney for Appellee


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above Appellee's Brief has been sent by facsimile and certified mail by depositing it enclosed in a postpaid, properly addressed wrapper in a post office or official depository under the care and custody of the United States Postal Service to Mr. Tokes Tosin Adeleye, 7901 Glen Cove Lane, Stone Mountain, Georgia 30083, Appellant/Respondent Pro Se.

SIGNED this _20th_ day of _July_, 20_15_.

_____
Theodore Haynes, Jr.
Attorney for Appellee

61

# VERIFICATION

STATE OF TEXAS §

COUNTY OF HARRIS §

BEFORE ME, the undersigned Notary Public, on this day personally appeared THEODORE HAYNES, JR., who being by me duly sworn on his oath deposed and said that he is the Attorney of Record for Appellee in the above-entitled and numbered cause; that he has read the above and foregoing; and that every statement contained therein is within his personal knowledge and true and correct.

_____
THEODORE HAYNES, JR.

SUBSCRIBED AND SWORN TO BEFORE ME on the ___20___ day of July, 20_15_, to certify which witness my hand and official seal.

_____
Notary's Signature

Roy Allen Broussard
(Notary's typed or printed name)

My commission expires: ___2/20/19___



ROY ALLEN BROUSSARD
Notary Public, State of Texas
My Commission Expires
February 20, 2019

S308364      **WARRANTY DEED**

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

TITLE AGENCY #28

02/04/97   100424564   S308364    $11.00

APPELLEE'S

**EXHIBIT NO. 1**

**Date:**      JANUARY 31,    1997

**Grantor:**    BTH, INC., A TEXAS CORPORATION

**Grantor's Mailing Address (including county):** 13101 NORTHWEST FREEWAY, SUITE 312
HOUSTON, HARRIS COUNTY, TX 77040

**Grantee:**    LONGTERM CARE, INC.

**Grantee's Mailing Address (including county):** 23015 ADWICK COURT
KATY, HARRIS COUNTY, TX 77450

**Consideration:**

TEN AND NO/100 DOLLARS ($10.00) AND OTHER VALUABLE CASH CONSIDERATION,
THE RECEIPT AND SUFFICIENCY OF WHICH IS HEREBY ACKNOWLEDGED.

**Property (including any improvements):**

LOT(S) 60, IN BLOCK 3, OF GOVERNOR'S PLACE, SECTION FOUR (4), A
SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT
THEREOF RECORDED AT FILM CODE NO. 353011, OF THE MAP RECORDS OF
HARRIS COUNTY, TEXAS.

**Reservations from and Exceptions to Conveyance and Warranty:**

THIS DEED IS EXECUTED, DELIVERED AND ACCEPTED SUBJECT TO ALL AND
SINGULAR ANY LIENS SECURING THE PAYMENT OF ANY DEBT CREATED OR
ASSUMED IN CONNECTION HEREWITH AND DESCRIBED HEREIN, AD VALOREM
TAXES FOR THE CURRENT AND ALL SUBSEQUENT YEARS, TAXES FOR
SUBSEQUENT ASSESSMENTS FOR THE CURRENT AND PRIOR YEARS DUE TO
CHANGES IN LAND USAGE, OWNERSHIP, OR BOTH, ZONING ORDINANCES AND
UTILITY DISTRICT ASSESSMENTS, IF ANY, APPLICABLE TO AND ENFORCEABLE
AGAINST THE ABOVE DESCRIBED PROPERTY, AND ALL VALID EASEMENTS,
RESTRICTIONS, RESERVATIONS, MINERAL RESERVATIONS AND MAINTENANCE FUND
LIENS, IF ANY, APPLICABLE TO AND ENFORCEABLE AGAINST THE ABOVE
DESCRIBED PROPERTY AS SHOWN BY THE RECORDS OF THE COUNTY CLERK OF
THE COUNTY IN WHICH SAID REAL PROPERTY IS LOCATED.

Grantor for the consideration and subject to the reservations from and exceptions to conveyance
and warranty, grants, sells, and conveys to Grantee the property, together with all and singular the rights
and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's successors
and assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators, successors
and assigns to warrant and forever defend all and singular the property to Grantee and Grantee's
successors and assigns against every person whomsoever lawfully claiming or to claim the same or any
part thereof.

When this Deed is executed by more than one person, or when the Grantee is more than one
person, the instrument shall read as though pertinent verbs, nouns and pronouns were changed
correspondingly, and when executed by or to a corporation, the words, "heirs, executors and
administrators" or "heirs and assigns" shall be construed to mean "successors and assigns". Reference
to any gender shall include either gender and, in the case of a corporation, shall include the neuter
gender, all as the case may be.

BTH, INC., A TEXAS CORPORATION

By: _____
Name:   DAVID A. ORLANDO
Title:    V.P.

ml59/tokes.cwd          Page 1 of 2

---

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and
unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with
the Public Information Act.

A Certified Copy
Attest: 6/18/2015
**Stan Stanart, County Clerk**
Harris County, Texas

Stella Roberts           Deputy



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

(Corporate Acknowledgment)

STATE OF TEXAS

COUNTY OF ___HARRIS___

This instrument was acknowledged before me on the ___31___ day of ___JANUARY___, 1997, by ___DAVID A. ORLANDO,_____, ___VICE-PRESIDENT_____ of BTH, INC., a Texas corporation, on behalf of said corporation.

_____
Notary Public, State of Texas
My commission expires:_____

KIRSTEN KREYBIG
Notary Public, State of Texas
My Commission Expires 03/26/98

FEB 4 1997

COUNTY CLERK
HARRIS COUNTY TEXAS

GF# 9628242670

AFTER RECORDING RETURN TO:

Adeley Tokes
c/o Federal Realty
15168 Bellaue Blvd,
Houston, TX 77083
cal59/tokes.cwd Attn: Joseph Lamiell

PREPARED BY THE OFFICE OF:

Barrett Burke Wilson Castle Daffin
& Frappier, L.L.P.
24 Greenway Plaza, Suite 2001
Houston, Texas 77046

Page 2 of 2

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 6/18/2015
**Stan Stanart, County Clerk**
Harris County, Texas

___Stella Roberts_____ Deputy



S308425          TITLE AGENCY #28



EXHIBIT NO. 2

NOTICE

02/04/97  100424565  S308425          $11.00

The real property described herein, which you are about to purchase is located in the CIMMARRON MUNICIPAL UTILITY DISTRICT. The district has taxing authority separate from any other taxing authority, and may, subject to voter approval, issue an unlimited amount of bonds and levy an unlimited rate of tax in payment of such bonds. As of this date, the rate of taxes levied by the district on real property located in the district is $1.30 on each $100.00 of assessed valuation. If the district has not levied taxes, the most recent projected rate of debt service tax, as of this date, is $1.30 on each $100.00 of assessed valuation. The total amount of bonds which has been approved by the voters and which have been or may, at this date, be issued is $40,670,000.00, and the aggregate initial principal amounts of all bonds issued for one or more of the specific facilities of the district and payable in whole or in part from property taxes is $14,570,000.00.

The district has the authority to adopt and impose a standby fee on property in the district that has water, sewer or drainage facilities and services available but not connected, and which does not have a house, building or other improvement located thereon and does not substantially utilize the utility capacity available to the property. The district may exercise the authority without holding an election on the matter. As of this date, the most recent amount of the standby fee is $-0-. An unpaid standby fee is a personal obligation of the person that owned the property at the time of imposition and is secured by a lien on the property. Any person may request a certificate from the district stating the amount, if any, of unpaid standby fees on a tract of property in the district.

The purpose of this district is to provide water, sewer, drainage or flood control facilities and services within the district through the issuance of bonds payable in whole or in part from property taxes. The cost of these utility facilities is not included in the purchase price of your property, and these utility facilities are owned or to be owned by the district.

The legal description of the property which you are acquiring is as follows: Lot(s) 60, in Block 3 of GOVERNOR'S PLACE, SECTION FOUR (4), a subdivision in Harris County, Texas, according to the map or plat thereof, recorded at Film Code No. 353011, of the Map Records of Harris County, Texas.

BY: _____   Date: 1-31-97
    BTH, Inc.
    DAVID A. ORLANDO, VICE PRESIDENT

BY: _____   Date: _____

PURCHASER IS ADVISED THAT THE INFORMATION SHOWN ON THIS FORM IS SUBJECT TO CHANGE BY THE DISTRICT AT ANY TIME. THE DISTRICT ROUTINELY ESTABLISHES TAX RATES DURING THE MONTHS OF SEPTEMBER THROUGH DECEMBER OF EACH YEAR, EFFECTIVE FOR THE YEAR IN WHICH THE TAX RATES ARE APPROVED BY THE DISTRICT. PURCHASER IS ADVISED TO CONTACT THE DISTRICT TO DETERMINE THE STATUS OF ANY CURRENT OR PROPOSED CHANGES TO THE INFORMATION SHOWN ON THIS FORM.

The undersigned purchaser hereby acknowledges receipt of the foregoing notice at or prior to execution of a binding contract for the purchase of the real property described in such notice or at closing of the purchase of the real property.

BY: _____   Date: 2-3-97.
    ADELEYE TOKES, C.E.O.
    LONGTERM CARE, INC.

BY: _____   Date: _____

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 6/18/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ **Deputy**
Stella   Roberts



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

STATE OF TEXAS

COUNTY OF Harris

This instrument was acknowledged before me on the 31 day of
JANUARY , 19 97 by BTH, Inc.. DAVID A. ORLANDO, VICE-PRESIDENT.

_____
Notary Public in and for the State of Texas

Commission Expires: _____

KIRSTEN KREYBIG
Notary Public, State of Texas
My Commission Expires 03/26/98

STATE OF TEXAS

COUNTY OF Harris

This instrument was acknowledged before me on the 3rd day of
February, 1997 by ADELEYE TOKES, C.E.O. of LONGTERM CARE, INC..



_____
Notary Public in and for the State of Texas

Commission Expires: _____

KIRSTEN KREYBIG
Notary Public, State of Texas
My Commission Expires 03/26/98

AFTER RECORDING RETURN TO:

LONGTERM CARE, INC.
C/O ADEYEKE TOKES
23015 ADWICK COURT
KATY, TX 77450

GF# 9628242670

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number
Sequence on the date and at the time stamped hereon by me, and was
duly RECORDED, in the Official Public Records of Real Property of
Harris County, Texas on

FEB 4 1997

COUNTY CLERK
HARRIS COUNTY TEXAS

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 6/18/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Stella    Roberts





EXHIBIT NO. 3

## Case Summary for EV52C0348292 as of July 11, 2015 10:23:32 AM :

### General Case Information

| | |
|---|---|
| **Case Number:** | EV52C0348292 |
| **Court Info:** | Click here to visit court web site. |
| **Style of Case:** | TOKES ADELEYE VS. MARGARET DRISCAL |
| **Filed Date:** | December 17, 2013 |
| **Case Status:** | DISMISSED |
| **Disposition:** | DISMISSED PLAINTIFF NOT PRESENT |
| **Disposition Date:** | January 07, 2014 |
| **Judgment Date:** | January 07, 2014 |

### Civil Information

| | |
|---|---|
| **Nature of Claim:** | EVICTION POSSESSION & RENT–1 DEF–IN COUNTY SERVICE |
| **Claim Amount:** | $0.00 |

## Party Information

| | |
|---|---|
| **Party Name:** | ADELEYE, TOKES |
| **Party Type:** | PLAINTIFF |

| | |
|---|---|
| **Party Name:** | DRISCAL, MARGARET |
| **Party Type:** | DEFENDANT |

## Event Information

| | |
|---|---|
| **Event Description:** | NonJury Trial |
| **Event Date/Time:** | January 07, 2014 04:00 PM |
| **Completion:** | DISMISSED |
| **Completion Date:** | January 07, 2014 |

## Payment Information

| | |
|---|---|
| Payment Date: | December 17, 2013 |
| Amount: | $111.00 |
| Payment Type: | MONEY ORDER |
| Transaction Type: | FILING FEE |
| Receipt Description: | FILING FEE |
| Payor Name: | ADELEYE, TOKES |

## Filing Information

| | |
|---|---|
| **Filing Description:** | PETITION FILED |
| **Date Added:** | December 17, 2013 |

| | |
|---|---|
| **Filing Description:** | COURT COST $41.00 |
| **Date Added:** | December 17, 2013 |

| | |
|---|---|
| **Filing Description:** | EV-CITATION-RENT |
| **Date Added:** | December 17, 2013 |

## Bond Information

## Judgment Information

### Disclaimer

Although Harris County Justice of the Peace Courts make every effort to ensure that information provided is accurate, neither Harris County nor any agency, officer, elected official or employee of Harris County, warrants the accuracy, reliability, or timeliness of any information on this web site and shall not be liable for any losses caused by such reliance on the accuracy, reliability or timeliness of such information, including, but not limited to incidental and consequential damages. This publication is provided "as is" without warranty of any kind, either expressed or implied, including, but not limited to, the implied warranties of merchantability, fitness for a particular purpose or non-infringement.

Any person who relies on information obtained from this website does so at his or her own risk. In addition, nothing contained within this web site is an official record of Harris County or the elected officials responsible therefore. All official records of Harris County and the offices of countywide elected officials are on file in their respective offices and may be reviewed by the public at those offices.

Please note: Because case status may change at any time, the case information displayed may not be accurate. If you have any questions about the case status shown, you should verify the information with the official case record.





EXHIBIT NO. 4

## Case Summary for CV52C0346688 as of July 11, 2015 11:26:18 AM :

### General Case Information

| | |
|---|---|
| **Case Number:** | CV52C0346688 |
| **Court Info:** | Click here to visit court web site. |
| **Style of Case:** | |
| MARGARET DRISCAL VS. TOKES ADELEYE DBA LONGTERM CARE ET | |
| **Filed Date:** | October 18, 2013 |
| **Case Status:** | DISPOSED |
| **Disposition:** | DISMISSED PER PLAINTIFF |
| **Disposition Date:** | April 14, 2014 |
| **Judgment Date:** | April 14, 2014 |

### Civil Information

| | |
|---|---|
| **Nature of Claim:** | SMALL CLAIMS MONEY DAMAGE–2 DEFENDANTS - IN CO. SERVICE |
| **Claim Amount:** | $0.00 |

## Party Information

| | |
|---|---|
| **Party Name:** | DRISCAL, MARGARET |
| **Party Type:** | PLAINTIFF |

| | |
|---|---|
| **Party Name:** | TOKES ADELEYE DBA LONGTERM CARE |
| **Party Type:** | DEFENDANT |

| | |
|---|---|
| **Party Name:** | GEORGINA VAN CAMP DBA KELLER WILLIA |
| **Party Type:** | DEFENDANT |

## Event Information

| | |
|---|---|
| **Event Description:** | Answer Due |
| **Event Date/Time:** | November 01, 2013 04:00 PM |
| **Completion:** | EXECUTED-SERVED |
| **Completion Date:** | November 21, 2013 |

| | |
|---|---|
| **Event Description:** | Answer Due |
| **Event Date/Time:** | December 02, 2013 04:00 PM |
| **Completion:** | ANSWERED PRO SE |
| **Completion Date:** | December 02, 2013 |

| | |
|---|---|
| **Event Description:** | NonJury Trial |
| **Event Date/Time:** | May 05, 2014 08:00 AM |
| **Completion:** | DISMISSED |
| **Completion Date:** | April 14, 2014 |

## Payment Information

| | |
|---|---|
| **Payment Date:** | October 18, 2013 |
| **Amount:** | $184.00 |
| **Payment Type:** | MASTERCARD/VISA |
| **Transaction Type:** | FILING FEE |
| **Receipt Description:** | FILING FEE |
| **Payor Name:** | DRISCAL, MARGARET |

## Filing Information

| | |
|---|---|
| **Filing Description:** | PETITION FILED |
| **Date Added:** | October 18, 2013 |

| | |
|---|---|
| **Filing Description:** | COURT COST $44.00 |
| **Date Added:** | October 18, 2013 |

| | |
|---|---|
| **Filing Description:** | CV-CITATION-MONEY DAMAGES |
| **Date Added:** | October 18, 2013 |

| | |
|---|---|
| **Filing Description:** | CITATION SERVED |
| **Date Added:** | November 01, 2013 |

| | |
|---|---|
| **Filing Description:** | CITATION SERVED |
| **Date Added:** | November 21, 2013 |

| | |
|---|---|
| **Filing Description:** | ANSWER FILED |
| **Date Added:** | December 02, 2013 |

## Bond Information

## Judgment Information

### Disclaimer

Although Harris County Justice of the Peace Courts make every effort to ensure that information provided is accurate, neither Harris County nor any agency, officer, elected official or employee of Harris County, warrants the accuracy, reliability, or timeliness of any information on this web site and shall not be liable for any losses caused by such reliance on the accuracy, reliability or timeliness of such information, including, but not limited to incidental and consequential damages. This publication is provided "as is" without warranty of any kind, either expressed or implied, including, but not limited to, the implied warranties of merchantability, fitness for a particular purpose or non-infringement.

Any person who relies on information obtained from this website does so at his or her own risk. In addition, nothing contained within this web site is an official record of Harris County or the elected officials responsible therefore. All official records of Harris County and the offices of countywide elected officials are on file in their respective offices and may be reviewed by the public at those offices.

Please note: Because case status may change at any time, the case information displayed may not be accurate. If you have any questions about the case status shown, you should verify the information with the official case record.



APPELLEE'S

EXHIBIT NO. 5

THE STATE OF TEXAS: IN THE JUSTICE PEACE PRECINT 5 PLACE 2

16715 CLAY ROAD SUITE 7, HOUSTON TEXAS 77084-4089

11/23/2013

Margaret Driscal (Plaintiff)

Vs                                    Case Number CV52C0346688.

Tokes Adeleye (Defendant)

Now comes Tokes Adeleye , the owner of the property 23015 Adwick Court, Katy ,TX 77450 acting Pro se

**RESPONSE OR ANSWER.**

The plaintiff , Margaret Egun  Date of Birth 11/26/1956. Aka, MargaretDriscal, Aka Margaret  Segun Date of birth 10/26/1956 is a guest on my property.

1. There is no verbal or written lease agreement.
2. The plaintiff does not pay rent; and has never paid any rent to me.
3. I allowed the plaintiff to reside for free in exchange for cutting the grass and good housekeeping
4. The plaintiff does not have any legal right on my property.
5. The $600.00 she paid was voluntary. It gave her exclusive right to use to use the swimming pool and tennis court in the community. (money was paid directly to the Community Association)
6. I am not aware and did not approve of any repairs or maintenance that cost or totaled $9000.00

**CONCLUSION.** The plaintiff's lawsuit or claim is frivolous.  The property belongs to me and she does not have any right or legal authority over my property. She is a guest and not a tenant. There is no legal contract. I can bring anybody of my choice to inspect my property .

The plaintiff came with unclean hands to perpetrate fraud on  this honorable court and me the defendant. Her actions,  are malicious and should not be rewarded.

I pray that this honorable court dismiss the plaintiff's claim and reward me the defendant whatever the court deem necessary for punitive and malicious acts.

Respectively Submitted,

Tokes Adeleye (defendant)

7091 GLEN COVE LN
STONE MOUNTAIN
GA 30087 .